UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PARENT and STUDENT,

                                 Plaintiffs,

-vs-

PITTSFORD CENTRAL SCHOOL DISTRICT,
MICHAEL PERO, Superintendent of the Pittsford
Central School District, KARL THIELKING, Principal
of Pittsford Mendon High School, LAURA HEFNER,
Assistant Principal of Pittsford Mendon High School,
MICHAEL LEONE, Pittsford Central School District
Human Resource Officer, and ANDREW BELLUSH,
formerly a teacher at Pittsford Mendon High School,

                                 Defendants.

DECISION AND ORDER

15-CV-6366 (CJS)
_____

APPEARANCES

For Plaintiff:          R. Brian Goewey, Esq.
                         Law Office of R. Brian Goewey, Esq.
                         45 Exchange Boulevard, Suite 716
                         Rochester, New York 14614

For Defendants:     Michael P. McClaren, Esq.
                         Jeremy A. Colby, Esq.
                         Webster Szanyi LLP
                         424 Main Street
                         1400 Liberty Building
                         Buffalo, New York 14202

INTRODUCTION

Plaintiffs maintain that Defendants discriminated against Student, a former high school student, in violation of federal disability statutes, and also committed various torts under New York State Law. Now before the Court is Defendants' motion to dismiss the Amended Complaint, for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1), and for failure to state a claim, pursuant to FRCP 12(b)(6). The application is granted, and all of Plaintiffs' claims are dismissed without prejudice.

BACKGROUND

Unless otherwise noted, the following facts are taken from the Amended Complaint. At all relevant times, Student was a high-school student at defendant Pittsford Central School District, with an alleged disability. According to the Amended Complaint, Student "had a 504 Plan that was designed to accommodate Student's impairments."[1] However, the Amended Complaint never describes either the disability or the contents of the 504 Plan, alleging instead that such information is "protected information from public disclosure" under HIPAA, FERPA, "and other statutes." Consequently, the Court has before it a lawsuit based on an alleged failure to accommodate a disability, and an alleged violation of a Section 504 Plan, where neither the disability nor the Section 504 Plan is explained.[2] Indeed, the only informative statements in the Amended Complaint concerning either the alleged disability or the 504 Plan are that the 504 Plan "acknowledge[d] that Student's learning and social functions [were] impacted by Student's impairments,"[3] that Student had a "504 Plan Tutor,"[4] and that Defendants' actions caused Student "distress," which was "exacerbated by" Student's unspecified impairments.[5]

Against this vague backdrop, Plaintiffs allege that Defendants mis-handled an employee disciplinary matter in such a way that it caused Student to experience emotional

---

[1] Amended Complaint [#34] at ¶ 61.

[2] Amended Complaint [#34] at ¶ ¶ 9, 12. While it may be true that such information is protected generally, Plaintiff put her health and educational information at issue by filing this lawsuit. Moreover, the Court has granted Plaintiffs the ability to proceed anonymously. Consequently, to the extent that Plaintiffs have nevertheless chosen not to plead any facts concerning Student's health or 504 Plan, that is a tactical choice. However, neither HIPAA nor FERPA excuses Plaintiffs' obligation to plead a plausible claim.

[3] Amended Complaint [#34] at ¶ 85.

[4] Amended Complaint [#34] at ¶ ¶ 54-55, 58.

[5] *See, e.g.,* Amended Complaint [#34] at ¶ ¶ 45, 48, 64, 74-77, 82. Although, the pleading does not explain why Student had a tutor as part of the 504 Plan.

distress.  More specifically, the Amended Complaint alleges that Parent became aware that defendant Andrew Bellush ("Bellush"), a high-school English teacher employed by the Pittsford School District, had posted a video on his personal Facebook page, in which he appeared to be intoxicated.  At the time, Student was enrolled in Bellush's 10th grade English class.  Parent learned about the video after Parent overheard Student's friends talking about the video.  Parent discreetly emailed Bellush about the video, and suggested that he ought to consider removing it from his Facebook page, as it was being viewed by students.  Shortly thereafter, Parent sent Bellush a second email message, asking Bellush to refrain from telling Student, who was enrolled in Bellush's English class, that Parent had notified him about the video, since "Student had certain impairments resulting in a 504 Plan," and the knowledge that Parent had contacted Bellush about the Facebook video "would exacerbate Student's impairments."[6]

Bellush responded by taking a screen-shot of Parent's initial email message, and placing it on his Facebook page, evidently to mock Parent's suggestion.  That is, Bellush published the message suggesting that he remove the video from his Facebook page, which included Parent's name; he did not publish the second message, which referred to Student's alleged disability.  Parent was unaware that Bellush had published the email. Subsequently, approximately three months passed, during which Parent apparently gave no further thought to the matter.

However, after that passage of time, Student was told, by classmates who had viewed Bellush's Facebook page, that Bellush had published Parent's email message on the Facebook page. Student experienced a "panic attack" over the matter, and notified Parent of what Bellush had done. Parent contacted the school, which suspended Bellush for one week.  In reaction to Bellush's suspension, "several" unnamed classmates

---

[6] Amended Complaint [#34] at pare 36.

"confronted and blamed Student for Bellush's absence from school."[7]

Student "felt betrayed" by Bellush's actions, and "experienced emotional distress that was exacerbated by Student's [unspecified] impairments."[8] Consequently, Student became upset at the prospect of being in Bellush's classroom after he returned from his suspension, and Parent communicated that fact to school officials. Parent requested a meeting to discuss the matter, and on March 21, 2014, Parent and Student's therapist met with administrators and staff at the High School, including defendant Assistant Principal Laura Hefner and the school psychologist. Parent indicated that Student was experiencing "extreme distress" at the thought of Bellush returning to school, and Student's therapist opined that Student "should not have to return to Bellush's class."[9] In response to those concerns, school administrators offered Student "two alternatives" -- "either return to Bellush's class or transfer to the other 10th grade English class."[10] Plaintiff's do not claim that there was any appreciable qualitative difference between the two English classes.

Nevertheless, Plaintiffs maintain that "[t]ransferring to the other 10th grade English class would have required Student to change Student's schedule which would have been disruptive to Student," and would have "exacerbated Student's mental distress due to Student's impairments."[11] Specifically, the Amended Complaint states that switching classes "would have reinforced Student's peers' perception that Student and Parent were responsible for Bellush's suspension *since Student would no longer be in Bellush's English*

---

[7]Amended Complaint [#34] at ¶ 43.

[8]Amended Complaint [#34] at ¶¶ 45, 48.

[9]Amended Complaint [#34] at ¶ 56.

[10]Amended Complaint [#34] at ¶ 59.

[11]Amended Complaint [#34] at ¶¶ 63-64.

*class*."[12]  In sum, Student was worried that switching classes would draw negative attention to her from classmates.

Parent and Student discussed the matter with Student's therapist, who "advised that remaining in Bellush's class was the better of the two options[.]"[13]  Consequently, Plaintiffs chose to have Student remain in Bellush's class.  Neither Parent, Student nor the therapist requested any additional options at that time, nor did they claim that the School District was required to offer additional options based upon Student's 504 Plan.  Indeed, the Amended Complaint admits that the 504 Plan was not discussed at the meeting.[14]

Upon Bellush's return to school, he made a statement to Student's English class, that "I won't try to ruin your life like you tried to ruin mine."[15]  Bellush directed the comment to the class, and not to Student personally.  Nevertheless, Student "understood" Bellush's comment as "Bellush's way of blaming Student for his suspension."[16]  Following Bellush's statement to the class, Student experienced additional "severe emotional distress" and feelings of betrayal by Bellush.  Without providing an actual date, the Amended Complaint alleges that "after a while," Student "stopped attending [Bellush's] class."[17]  In May 2014, the high school provided an English tutor for Student, and Student completed the course

---

[12] Amended Complaint [#34] at ¶ 62.

[13] Amended Complaint [#34] at ¶ 65.

[14] Amended Complaint [#34] at ¶ 58.

[15] Amended Complaint [#34] at ¶ 72.

[16] Amended Complaint [#34] at ¶ 73.  According to the Amended Complaint, and despite the alleged petulant statement that is attributed to Bellush, Student actually had nothing to do with Bellush's suspension.

[17] Amended Complaint [#34] at ¶ 77.

with a grade of 96.[18]

On June 18, 2015, Plaintiffs commenced this action. The Amended Complaint purports to state eight separate causes of action: 1) denial of a "free appropriate public education" ("FAPE") in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), based upon the School District's failure to provide an English tutor, rather than merely giving Student the option of either staying in Bellush's class or moving to the other English class; 2) violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § § 12131-34, based on the School District's discrimination against Student on the basis of a disability, "in not providing a tutor for 10th grade English"; 3) negligence under New York State law, based upon the School District's breach of duty in "not providing Student with a tutor" after allowing Bellush to return to work; 4) negligence under New York State law, based on the School District's negligent hiring and supervision of Bellush; 5) "negligence" based on the School District's violation of a "statutory duty" under Section 504 of the Rehabilitation Act, by failing to consider the impact that Bellush's return might have on Student, who had a 504 Plan, and by failing to modify Student's 504 Plan; 6) "negligent infliction of emotional harm" based upon Bellush's misconduct and the School District's failure to modify Student's 504 Plan; 7) "violation of civil rights under 42 U.S.C. § 1983," based upon the School District's violation of Section 504 and the ADA, with "deliberate indifference," by allowing Bellush to return to his job and by not offering Student an English tutor; and 8) a claim for money damages by Parent, resulting from the School District's failure to provide Student with a FAPE.

On August 1, 2016, Defendants filed the subject motion (Docket No. [#36]) to dismiss the Amended Complaint. Defendants first contend that all of Plaintiffs' federal

---

[18] *See*, Warren Affidavit, Docket No. [#36-3]. The Amended Complaint asserts that the only reason Student received such a high grade was because Bellush inflated the grade after Parent served a notice of claim on the School District. However, that bald accusation is not supported by any factual averments.

claims must be dismissed for lack of subject-matter jurisdiction pursuant to FRCP 12(b)(1), since Plaintiffs failed to exhaust their administrative remedies before commencing this action. Alternatively, Defendants claim, pursuant to FRCP 12(b)(6), that Plaintiffs' claims fail as a matter of law. Plaintiffs oppose the application.[19] On January 25, 2017, counsel for the parties appeared before the undersigned for oral argument.[20]

## DISCUSSION

Defendants' motion is made pursuant to both FRCP 12(b)(1) and FRCP 12(b)(6). With regard to the 12(b)(1) application to dismiss for lack of subject-matter jurisdiction, the standard to be applied in pertinent part is as follows:

> In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction. But where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits. In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citations and internal quotation marks omitted).

With regard to Defendant's motion to dismiss for failure to state a claim, the general legal principles concerning motions under FRCP 12(b)(6) are well settled:

---

[19] In Plaintiffs' responsive papers, Plaintiffs' counsel accuses Defendants' counsel of "eroding" Parent's privacy, by mistakenly referring to "Parent" as "Mother." Pl. Memo of Law at p. 1 ("By misidentifying Parent, defendants have eroded some of the privacy protection afforded by securing leave to proceed anonymously."). Plaintiffs' counsel's emphasis on this point is difficult to fathom, since in the publicly-filed Amended Complaint that *he drafted*, Parent is identified as the "mother" of Student eight times. Amended Complaint at ¶ ¶ 2, 33, 40, 48, 55, 68, 75, 114. Applying Plaintiffs' counsel's logic, he "eroded" his client's privacy prior to Defendants' counsel doing so.

[20] On November 8, 2016, Plaintiffs filed their responsive papers. On January 25, 2017, the day of oral argument, Plaintiffs faxed additional legal argument to the Court, concerning matters that were addressed in Defendants' initial moving papers months earlier. The Court declines to consider Plaintiffs' untimely submission, but that has no effect on the outcome because such papers offered nothing new.

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).[21]

Exhaustion of Administrative Remedies

Defendants maintain that Plaintiffs' ADA claims and Section 504 claims must be dismissed for lack of subject matter jurisdiction, due to Plaintiffs' failure to exhaust administrative remedies. Plaintiffs admit that such exhaustion is ordinarily required, but contend that they are excused from exhaustion, since the School District failed to advise them of their procedural due process rights, after the School "denied" Student a tutor.

The applicable law on this point is clear and undisputed. At the outset,

> [a]lthough plaintiffs do not plead an IDEA violation, it is well settled that plaintiffs must exhaust administrative remedies under the IDEA whenever they assert claims for relief *available* under the IDEA, regardless of the

---

[21] It is of course well-settled that in resolving a 12(b)(6) motion, the Court is limited as to what it can consider. *See, Vasquez v. City of New York*, No. 10 Civ. 6277(LBS), 2012 WL 4377774 at *1 (S.D.N.Y. Sep.24, 2012). (On a 12(b)(6) motion, "a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.' " *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (*quoting Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993)).").

> statutory basis of their complaint, and that the failure to do so deprives the court of subject-matter jurisdiction.

*L.K. v. Sewanhaka Cent. High Sch. Dist.*, 641 F. App'x 56, 57 (2d Cir. Mar. 4, 2016) (emphasis in original, internal quotation marks omitted). This IDEA exhaustion requirement applies to claims under the ADA and Section 504 which involve the education of disabled children. *Id*. ("[I]f the 'theory' behind a claim relates to the 'education of disabled children,' IDEA exhaustion is required unless plaintiffs demonstrate that their failure to exhaust should be excused.").

However, such exhaustion may be excused in certain instances, such as where parents were never notified that administrative remedies were available to them. *See, Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002) ("While it is true that IDEA plaintiffs are generally required to exhaust their administrative remedies prior to seeking redress in federal court, this requirement is not inflexible. Exhaustion will be excused where . . . the parents have not been notified that such remedies were available to them.") (citations omitted).

Here, Plaintiffs maintain that they are excused from exhausting the IDEA administrative remedies because the School District failed to advise them of their administrative remedies, when it "denied" Student a tutor. However, the Court finds that Plaintiffs have not carried their burden on this point.

Defendants have submitted an affidavit [#36-2] from Todd Warren ("Warren"), "the Student Services Teacher and Section 504 Coordinator" at the subject high school. Warren indicates that he gave Student's parents multiple notices concerning their procedural due process rights under Section 504, prior to the events described in the Amended Complaint. More specifically, Warren states that twice during the 2012-2013 school year, the district provided Parent with written copies of the Procedural Safeguards

Notice ("PSN"), and that on November 15, 2012, Parent acknowledged having received a copy of the PSN.[22] Warren further indicates that, in addition to providing Parent with two copies of the PSN, the School District published the PSN on its website, which was publicly available.[23] Warren's affidavit thus establishes that the School District twice provided Parent with actual written notice of Parent's procedural due process rights prior to the alleged "denial" of a tutor in March 2014.

In response to Defendants' submissions on this point, Plaintiffs have not submitted any affidavits opposing the factual averments in Warren's affidavit. Nor have Plaintiffs claimed that they were unaware of their procedural rights. Instead, Plaintiffs' counsel has submitted an affirmation arguing both that it was improper for Defendants to submit the affidavit from Warren, since it was outside of the pleadings, and that the Court cannot make findings of fact in connection with the subject application.[24] However, counsel's argument is clearly mistaken on these points, as parties can submit matters outside of the pleadings on a Rule 12(b)(1) application, and the Court can resolve disputed issues of fact relating to jurisdiction on a Rule 12(b)(1) application. *See, e.g., Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, as it did here, may refer to evidence outside the pleadings."). This aspect of Plaintiffs' opposition therefore lacks merit.

Alternatively, Plaintiffs argue that a school district must give written notice to parents whenever it "refuses . . . to change" the "educational placement" of a child or the "provision of FAPE" to a child, and that the District's "refusal" to provide Student with a tutor upon

---

[22] Docket No. [#36-3] at p. 29.

[23] Warren also states that Student's 504 Plan did not call for Student to have an English tutor, and that during the relevant school year, the School District never changed or reduced the services that Student received pursuant to the 504 Plan.

[24] *See*, Goewey Affirmation [#39-1].

10

Bellush's return from his suspension amounted to such a refusal, which triggered the requirement for the school district to provide Parent with additional notice of procedural safeguards.[25] Plaintiffs maintain that they are excused from exhausting administrative remedies, because the school district did not provide such notice in March 2014.

Initially, the Court disagrees that the School District "refused" to provide a tutor. Plaintiff's use of the term "refuse" is contrary to its ordinary meaning, as there is no factual allegation in the Amended Complaint indicating that the school district denied a request to provide Student with an English tutor, or to otherwise change Student's 504 Plan or educational placement.[26] The School District cannot be deemed to have "refused" to provide a tutor when it was never asked to do so.[27]

Plaintiffs nevertheless argue that the school district was aware that Student had a disability that was exacerbated by stress, and therefore should have offered Student an English tutor, without being asked. Plaintiffs contend that the school district's failure to do so amounts to a "refusal to initiate or change the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child," within the meaning of 20 U.S.C. § 1415(b)(3), which would have triggered the requirement

---

[25] Plaintiffs' Memo of Law [#39] at p. 6.

[26] Elsewhere in the Amended Complaint Plaintiffs indicate that "Parent was not offered a tutor," which is not the same thing as the school district "refusing" to provide a tutor. Amended Complaint [#34] at ¶ ¶ 60-61.

[27] Amended Complaint [#34] at ¶ ¶ 58, 70. Plaintiffs alternatively argue that the school district had a duty under the circumstances to amend Student's 504 by providing an English tutor, without any prompting from Parent, but cite no instance in which comparable conduct has resulted in liability against a school district under the ADA or Section 504, which require evidence of bad faith, gross misjudgment or reckless or deliberate indifference. See, Pl. Memo of Law at p. 11 (Stating: "As PCSD and its staff are education experts, it was not incumbent upon Parent to suggest any specific accommodation other than [sic] to advise the defendants of the emotional distress that Bellus's misconduct had caused and the difficulty Student was having trying to focus and learn as result of such."). However, even if the Court reached the 12(b)(6) aspect of Defendants' motion, it would find that Plaintiffs have not pleaded plausible claims under those statutes, since to the extent that the school district did anything wrong here regarding Student's placement or FAPE, the allegations in the Amended Complaint do not rise to the level of intentional discrimination.

to give additional notice of procedural safeguards.

The Court disagrees, for several reasons. To begin with, Plaintiffs have not provided any example of a court interpreting 20 U.S.C. § 1415(b)(3) in that manner. Additionally, the Amended Complaint belies Plaintiffs' assertion that the school district "should have" offered Student an English tutor upon Bellush's return from his suspension. On this point, it is necessary to emphasize that the provision of such a tutor would have resulted in Student *not* attending either of the two sections of 10th grade honors English, and instead, would have resulted in Student being removed from the English classroom and receiving all English instruction from a tutor outside of class. However, removing Student from the classroom in that manner would have surely drawn unwanted attention to Student, according to Plaintiffs, who gave that very reason for having Student remain in Bellush's class in the first place: "Transferring to the other 10th grade English class would have amplified Student's emotional distress at it would have reinforced Student's peers' perception that Student and Parent were responsible for Bellush's suspension *since Student would no longer be in Bellush's English class*." Amended Complaint [#34] at ¶ 62 (emphasis added). Accordingly, the Court cannot see how the school district can be faulted for failing to offer Student a different option (tutoring) that would have also removed Student from Bellush's classroom. In any event, for reasons already stated the Court finds that the subject meeting concerning Student's apprehension over Bellush's return to school was not an event that triggered a duty by the school district to provide additional notice under 20 U.S.C. § 1415(b)(3).

However, even assuming *arguendo* that the School District was required to provide Parent with an additional procedural due process notice in connection with Bellush's return to work, the issue is whether Plaintiffs should be excused from exhausting administrative remedies based on the School District's failure to provide such notice at that precise

moment. On this point, it is undisputed that the school district provided Parent with such notice on multiple prior occasions. On similar facts, the Second Circuit has held that the prior notice was sufficient. *See, L.K. v. Sewanhaka Cent. High Sch. Dist.*, 641 F. App'x 56, 58 (2d Cir. 2016) (Rejecting parent's claim that school district had failed to provide notice of procedural safeguards, where school had provided such safeguards, and parent had acknowledged in writing that she received the notice) and *Dervishi on behalf of T.D. v. Stamford Bd. of Educ.*, No. 15-3636-CV, --- Fed.Appx. --- , 2016 WL 5852817 (2d Cir. Oct. 6, 2016) (Stating that, "the record shows that the Board gave Dervishi sufficient notice of her procedural rights under the IDEA," where, according to the brief and supplemental appendix of the Defendant-Appellee, 2016 WL 2942590 at *23-24, the school provided the parent with multiple copies of the procedural safeguards notice.). Consequently, the Court finds that Plaintiffs unjustifiably failed to exhaust administrative remedies before commencing this action, and that the Section 504 and ADA claims must therefore be dismissed for lack of subject-matter jurisdiction. This includes the first and second causes of action, as well as the eighth cause of action to the extent that it seeks money damages for Parent based on the alleged ADA and Section 504 violations.

<u>Plaintiffs' Section 1983 Claims Are Unexhausted and Duplicative</u>

Plaintiffs' seventh cause of action purports to state a claim under Section 1983, based on Defendants' alleged violation of Section 504 and the ADA. More specifically, Plaintiffs' Section 1983 claim alleges that defendants were "deliberately indifferent"[28] to

---

[28] The Amended Complaint [#34] alleges that the school district's failure to offer Student a tutor evidenced "deliberate indifference," since the school was aware that during the seventh and eighth grades, Student had received all of her instruction from tutors. *Id*. at ¶ 91. However, the pleading fails to explain why Parent, who was also obviously aware that such tutoring had previously been provided to Student, failed to again request a tutor if the other options being offered to Student were unacceptable, as Plaintiffs now claim. *See, id*. at ¶ 93 ("The two options provided to Parent and Student by [the school district] were reasonably certain to exacerbate Student's impairments[.]").

"Student's impairments and Student's right to a free appropriate public education."[29] However, Plaintiffs also failed to exhaust their administrative remedies as to this § 1983 claim. In that regard, Plaintiffs were required to exhaust their administrative remedies as to the § 1983 claim, since it also asserts a claim covered by IDEA. *See, Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 249 (2d Cir. 2008) (Dismissing Section 1983 claim for failure to exhaust IDEA administrative remedies, where claim sought relief that was available under IDEA, stating, "[W]e hold that the IDEA's exhaustion rule applies to all of appellants' federal causes of action regardless of their statutory bases.").

Furthermore, "[a] § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). (On the other hand, where a plaintiff is suing based upon a statute with its own structure for private enforcement, he "is not precluded from bringing a concurrent § 1983 action, . . . so long as the § 1983 claim is based on a distinct violation of a constitutional right." *Id*.) In the instant case, both Section 504 and the ADA contain their own enforcement mechanisms, and the Amended Complaint does not allege any "distinct violation of a constitutional right." Rather, Plaintiffs' § 1983 claim is based on violations of Section 504 and the ADA, with only an additional allegation that Defendants acted with deliberate indifference.[30] Consequently, the § 1983 claim cannot be maintained. *See, Grassel v. Dep't of Educ. of City of N.Y.*, No. 12 CV 1016 PKC, 2015 WL 5657343, at *12 (E.D.N.Y. Sept. 24, 2015) ("To the extent the Complaint can be construed to assert a deprivation of civil rights under Section 1983, the Court finds such a claim to claim to be duplicative of Grassel's ADA discrimination claims, therefore requiring their dismissal.").

---

[29] Amended Complaint [#34] at ¶ 137.

[30] Amended Complaint [#34] at ¶ ¶ 135, 137.

For all of the foregoing reasons, Plaintiffs claims under Section 504, the ADA and Section 1983 are dismissed.

### The Court Declines to Exercise Supplemental Jurisdiction Over the Remaining State-Law Claims

The Court having dismissed all claims over which it purportedly had original jurisdiction, it declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the third, fourth, fifth and sixth causes of action are dismissed without prejudice.

## CONCLUSION

Defendants' motion to dismiss [#36] is granted. The first, second, seventh and eighth causes of action are dismissed without prejudice, pursuant to FRCP 12(b)(1). *See*, *JetBlue Airways Corp. v. CopyTele Inc.*, 629 F. App'x 44, 45 (2d Cir. 2015) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.") (quoting *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999)). The remaining causes of action are dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(3). The Clerk of the Court is directed to close this action.

SO ORDERED.

Dated: Rochester, New York
     February 17, 2017     ENTER:

    /s/ Charles J. Siragusa
    CHARLES J. SIRAGUSA
    United States District Judge